We have three cases this morning. We'll see if we take them without a break, but lawyers should stay in the courtroom or nearby, make sure they're here when their case comes up. First case of the morning, United States v. Green, 24-30613. Good morning. My name is Deborah Pierce. I'm here today as court-appointed counsel for appellant Rashad Green. Your Honor, this case comes down to a defendant's right to have a fair sentencing. In this case, the parties agree that the evidence in this record comes from the home surveillance system that was attached to co-defendant Mr. Bazeal's home, his home security system, the statement of an eyewitness tow truck driver, and then there were four statements by parties, Mr. Bazeal, Mr. Green, who are co-defendants, and two of the associates who arrived in the car armed after coming to finish a fight. They were later apprehended and gave statements as well. There was a guilty plea, originally five counts down to two, and there is a waiver, but not on direct appeal. Is that correct? There were five counts. Count one did not pertain to Mr. Green. Two through five did. He pled to two and three, which were gun charges. The appeal did not waive the right to challenge the sentence. On direct appeal. Right. Seemed to on collateral. Yes. I think you're probably correct there, but I'd have to look back to be sure, but not on direct appeal. And his predicate is a carjacking predicate, correct? It is. It is. It is. The problem with this case is I don't think the district court got all of the material evidence. This tow truck driver statement is very important. The government relied on that statement in its response to Mr. Green's PSR objections. It talks about the tow truck driver was there. He was an eyewitness. This car comes screeching up. Five to six armed gunmen jump out of the car. That the car did leave thereafter, but the armed gunmen did not all leave. They were still across the street from Mr. Bazile's home. But this is going to the district court clear error as to either self-defense or heat of passion. That's your primary argument. And perhaps the aiding and abetting as well. And that's where I'll get into the second part about the backyard. Just to direct your attention, though, when you say he objected to the PSR, what I was, you know, PSR, like the factual basis, delves into facts about exactly whether Green goes back in with the stepfather, arms himself comes out. That's mostly in paragraph 23. There was no objection to paragraph 23. There was. Are you sure? Yes. I'm virtually positive. Yes. At record page 1086, the first objection is to paragraph 23. Record page 1086? Yes. Because in the addendum, it didn't look like that. Okay. So he objected to all those facts. And then when he gets to sentencing, he again wants to rebut the facts in paragraph 23? At sentencing, does he want to rebut? No, what happened was he objected to 23. He said Mr. Bazile went out first and fired first. Mr. Green went out first. Oh, right. He's objecting to the simultaneity of the fire. But he's not objecting to the sequence of facts that arguably defeat self-defense. In other words, 23 says, and it seems to be consistent with the factual basis, after the confrontation, they go in the house, then they go out in the back, then they get armed, then they come back out. And that makes it difficult to say they couldn't have taken some other avenue, no imminent harm. They didn't put themselves in danger. I should have been more precise. If 23 is not objected to as to all those facts of interim steps, doesn't that make it very difficult to say there's clear error as to no self-defense? It would, except that it doesn't look like this backyard meetup even happened. But he admitted to it in 23. He didn't object to that. He was given pictures and a chronology of events. Right, but he signed every page of the factual basis. He did sign it, but the time stamp was cut off of this paper. I know, but he signs it with counsel, and then he doesn't object to the facts in paragraph 23. I don't think he knew. He recently filed a 2255 with the district court. Right, but that's why I asked you about the waiver. He's waived challenging the sentence on collateral review. So here he is on direct, which he preserved. But in the factual basis, he signs every page that confirmed the sequence, and then he doesn't object to the facts in paragraph 23. So I'm just trying to say how could we say clear error if we accept the facts in paragraph 23? Or are you saying we shouldn't accept them? Well, 23 was changed to, first of all, to remove the word simultaneous. Yeah, I'm not focused on who the stepfather fired, he fired. That doesn't seem to be really directly going to self-defense. The rest of the facts seem to rebut any theory of self-defense. I'm just pressing you, so disagree. I understand. That's why I'm looking closer at 23. Yeah, thank you. I'm not finding that 23 has that much more information in it. The simultaneous was removed. It talks about Mr. Beale did – Mr. Bazeal did fire at the juveniles, stating he – No, I'm – so you're right. It's 22. It is 22. I thought it was 22 originally. I'm just – a few of them exit the vehicles. Okay, that's the confrontation. Then they told him to leave. Then they go inside. While inside, Bazeal arms himself. Green exits to the back of the house. He arms himself. Then they meet in the backyard, armed with the guns. If they had the time to do all that, the facts in paragraph 22, how could it possibly be self-defense? And that's why I raised the insertion of this photo in the factual basis. Okay. I think he didn't, at the time of the plea, didn't notice that the time stamp had been cut off of this picture. These pictures were presented with the narrative, and he thought this is what came from the home surveillance system. Lo and behold, this – But he would know if he met in the backyard or didn't meet in the backyard or went back there to arm himself or whatever before or after. I don't think he knew. The picture of the after meeting, I guess his version of events, is that that either didn't happen or it happened afterward. It doesn't negate that they didn't also go back to the backyard before. There's no evidence that they did go in the backyard other than, you're correct, that it is in the factual basis. And it's in the PSR. And it's in the PSR. Right. The problem here is he didn't know that this was an error at the time. He took this plea. He saw these pictures. He was presented with pictures from a hotel. But I'm struggling. How do you not know whether you did that or didn't do that? It's kind of key. It is key. But if it didn't happen and he's being shown these pictures and they're telling him this is how – we're showing you this came from the surveillance system. And so he thinks it's correct. But the surveillance system shows it didn't happen that way, that they didn't go have this backyard meet-up. That happens at – The surveillance system – I used the time that was on the surveillance system itself. That happens at the 3 o'clock, 43-minute mark. It was a 3-minute, 43-second mark. They're already back inside after this initial shootout after that point. And I'd like to hearken back to the tow truck driver because I'm not sure. First of all, I'd hope that this court has the videos that were submitted. You are trying to impeach the guilty plea agreement. And you're right. You objected to 23, but we'd also have to disregard 22 that wasn't objected to. Right. Because they align with each other. So this man got a plea. That's why I say he got a couple counts dismissed, signs the plea agreement, signs every page. I don't usually see that. Then you've got the PSR not objected to, and yet we'll still say it's clear error because when we look at the surveillance. Well, he pled to the gun counts. He didn't plead to secondary murder. I don't know for sure if he even saw that coming. That's an issue for perhaps another day. But I think what worries me is that the district court may not have gotten a full picture here. For instance, the court didn't. He didn't file a motion to withdraw. I know you weren't his counsel then. No. But he should have. The minute he sees the PSR is going to give him a narrative that wasn't true, he should have filed a motion to withdraw his guilty plea. He should have. Because the whole thing you're saying. He also did object, and this is pages 1086 to 88, objections 2 through 4 are all about the self-defense and that things didn't happen this way. He says they did not leave, meaning the armed gunmen. They were still there, that they were brandishing guns, that they acted in self-defense here. The 3 and 4 are really more about the offense level, that flow there from. So there was an objection on that as well. But I have to wonder if the district court knew the entirety of the tow truck driver's statement. The government in its response to the PSR objections gave the court, and it didn't provide any citation, but it gave the court the tow truck driver's statement to Detective Johnson, which was in the beginning part where the armed gunmen arrived, and the ending part where they come back and they drag the decedent away, but they omit that the tow truck driver said that the one in blue was still across the street and he was firing back at Mr. Bazille, and this was before Mr. Green exited the residence. The court didn't have that information. That's why I asked. I'm hoping that you all have these videos. I'm not 100% sure if trial counsel had it. I did ask him. The government was kind enough to send me these. So you think it is like Santiago. It was just one constant confrontation. There was no time to do anything because they stayed there the whole time armed. He's got his family inside. That's your theory. Up to six kids I counted. There could even be more in and out. In fact, one child pokes his head out and there's another shot. If you look at the video, this is, and I'll tell you too, I relied on Exhibit 5 from the detention hearing, which is the same almost as Exhibit 2 that was submitted with the response to the PSR objections, and I did that because it's longer. It shows the arrival. It shows what happens afterwards. And it shows the final barrage that was when the tow truck driver said they shot again at the residence. So I just don't know if this district court had all of these facts here. But the district court did hear evidence, right? There was the family member, maybe his wife or his mother. Right, the aunt. And they weren't really saying we were under a barrage of gunfire. They were saying, well, we don't really think New Orleans police is competent was the word. She said more than that. She said more than that. Well, but that specifically the question was asked by Judge Affred, why not call the police? And the response was not we didn't have time. It was they're not competent. Right, given the neighborhood. And I will tell you there is another exhibit. It's to the government's opposition to a downward departure motion where the neighbor whose house was shot directly across the street says this is the second time this has happened in their neighborhood. So, you know, I don't live in that kind of neighborhood. I doubt you judges do either. But it is a little different. But she did say that. That's what the witness told Judge Affred. You don't live here. You know, but. But she did talk about the shooting. And that actually brings us to another point. The judge came into the sentencing at 2 o'clock. He's already written his order that is issued right after the sentencing. Sentencing at 2 o'clock, the order on rejecting self-defense, cross-reference to second-degree murder. He didn't even know that these people had shot at Mr. Bazille's home or shot at anybody. The aunt had to correct that. And then the judge quite appropriately turned to the government and said, well, what do you have to say about that? And the government says nothing. And then the defense counsel says, well, wait a minute. The record does show that they fired back. And then the government says, well, only after Bazille and Green went back inside of the house. The tow truck driver said that's not true. That the boy in blue, the young man in blue, was across the street and he was firing back at Bazille. What are the elements of self-defense? Whether there's an imminent threat. And keep in mind. There was an unbroken, imminent threat. I think from Mr. If you look at the perception of Mr. Green, he's not out there. Bazille walks out there first with nothing in his hand at first. Then he sees the guys, one or more, across the street with the guns. The evidence is that Mr. Bazille fires first. Green hears these shots and then he comes out. This is his stepfather. So there's imminent defense of another would come in here. It's not just self-defense. Defense of another. And, of course, the five or six children are still in there. Whether there was a reasonable alternative. Well, he's heard the shots. He goes out. So I guess the twist of that point is leave your dad out there in the middle of a gunfight, knowing there's five or six guys that are armed out there and just your dad by himself. We're back to the problem of every bit in the existing record shows they go back in and arm and come out. Your whole argument depends on all of that didn't happen. The father was out there start to finish. No, no. Let me correct that. They did go back inside. They did go back inside. And I have to acknowledge that. They did go back inside. But what case would then say you don't have an imminent threat? You're inside the door. They're inside, and the video shows you hear gunfire at the house. So they can attack? And then Mr. Bazeal comes back out with nothing in his hand, but then he pulls the gun. And he's got his grandchildren and his stepsons. Imminent threat, no alternative. What's the third? Let me check it. I always forget all of these. You don't recklessly place yourself in the position. Mr. Green didn't exit when Bazeal did. If this were really a conspiracy or an agreement to go out and simultaneously fire, which didn't happen per the tow truck driver, even the PSR doesn't say that. It changed paragraph 23. But he stayed inside. He heard the fire, and then he went out. So that's different than recklessly placing yourself. And if you think your dad's out there getting fired upon, I would think a son or even a daughter might step out and defend. We've already talked about the reasonable alternative. If the backyard incident, if it didn't happen, these are corner lots. We've got 15 seconds. They could have maybe gone out the back, but they didn't know where the gunmen were. They're corner lots. So if they went out, they could have had them on the side of the house. They were all over the place. If the court doesn't have any more questions, I will just reserve time for rebuttal. Thank you, Counselor. May it please the Court. My name is Patrick Barr, and I represent the United States. This Court should affirm Rayshawn Green's sentence for two reasons. First, the District Court correctly applied the Santiago criteria and found that self-defense was not applicable in this case. And second, the District Court's determination that second-degree murder was the appropriate cross-reference was reasonable, given the evidence. Starting first with the issue of self-defense, the District Court considered and dismissed Green's claim of self-defense as required by Santiago. In doing so, the District Court explicitly found that Green's claim failed on the first and third criteria, the first being no imminent threat and the third being no reasonable alternative. Here, for the first criteria, the District Court determined that Green was able to enter the house, close the door, and the juveniles were dispersing or in the process of leaving when he entered the house. When you say the District Court determined, you mean accepted the PSR, which had paragraph 22? Correct, Your Honor. And that's supported by the factual basis? It is supported by the factual basis. The mystery is probation, even after you objected, probation somehow actually still fought, even given those facts, the guy gets self-defense, right? Your Honor, the probation did determine that. They still determined that voluntary manslaughter was the appropriate cross-reference. That doesn't make any sense, does it? The government is a little unsure how they got to that answer, too. If there is a valid self-defense, it would be for both. Right. If there's self-defense, we have no cross-reference to manslaughter or murder. Correct. But you objected saying there's just not any of the three elements for self-defense, but probation? Remind me why they didn't accept the government objection? Probation believed that there was an imminent threat to the house, to Mr. Green and the family members. Not on the theory that the surveillance photos show. They actually, the probation came to that conclusion even though they're in the backyard arming themselves? Yes, Your Honor. The probation came to the conclusion based on the facts as presented in the factual basis and the PSR, which is a dispute that both the government at the district court had and the district court itself disagreed with probation on that. And it goes down to, as this court has said oftentimes most recently in Hernandez, which was a post-Santiago case, two permissible views of the evidence doesn't create a clearly erroneous finding. So even though the probation agreed with Green and the government and the district court disagreed with that, those two could be permissible and therefore there is not a clearly erroneous finding or a clearly erroneous conclusion. What case would ever make it permissible to find self-defense for an individual to go in their own backyard and arm themselves? Your Honor, the government would, I think that you could have a situation where there is imminent threat and there is no reasonable alternative except for going and arming yourself. Perhaps if this was a deluge, a barrage of fire against the house, perhaps if there was some other facts here that might tip the balance there towards, hey, you can arm yourself. You can take the time you needed to arm yourself and then return fire. That's simply not the case here. We have Bazille and Green both outside confronting the juveniles. Bazille enters the house. Green also enters the house, turns his back to the armed juveniles, opens the door, goes inside, closes the door, arms himself, meets with his stepfather, and then they exit the house and begin firing. Now, there's a dispute here on whether Green exited the house. I think the video, the factual basis and the PSR are both clear that he exited the house prior to the shooting. The video is also very clear that he is outside with the machine gun brandish. Testimony at the sentencing that Green did call the police or was no one alleged that there was a call to the police? There is evidence from Bazille's interview with Orleans Parish police that he called the police. There's no evidence that that actually happened. The police definitely don't show up from start to finish? They do not show up until the scene is calm, the juvenile is deceased, and his associates have left. There's body cam of them showing up, but it's significantly after the shooting. The important thing here is that the district court based its determination about self-defense on the evidence before it. It had the evidence of the PSR. It had the evidence of the factual basis, which Mr. Green signed the factual basis. He did not object to paragraph 22 of the PSR. He objected to one word of paragraph 23. Did Green allocute? I'm sorry, Your Honor? Did Green allocate? Because Judge Afric was inquiring about all of this. Did Green himself say anything at sentencing? He did, Your Honor. He gave a statement in which he claimed broadly self-defense again, because he had pending state murder charges. So he actually did say something about it? He did, Your Honor. I don't know how much detail he went into, what his thought process was or anything of that nature. Okay, I didn't remember that. So in the transcript of the sentencing, Green is going to say, I acted in self-defense? I believe so. I could be mistaken on that, but I know he did give a statement. In terms of the evidence that Green does not leave the house until shots are fired, there are on the video, there is a burst of automatic machine gun fire that is heard. And I would contend that the video, audio and video are not lined up properly. When Green fires his weapon, fires the machine gun, you can see the machine gun being fired. You see the muzzle flash, and there is no sound. So when you line that up with the sound that you heard earlier, that is the explanation for the shooting. That's, again, consistent with the factual basis and the PSR that Green and Bazille left the house and then they began firing. There was no facts put before the district court that there was any sort of shootout beforehand. The tow truck driver doesn't say Green was in the house until after the shooting. He describes what he saw, which is Bazille firing first and the victim returning fire after Bazille fired. He actually doesn't say very much at all about Green. So, again, in terms of looking at this from the Santiago factors, this has been considered. It was rejected on two of the four criteria, and the finding isn't clearly erroneous given the evidence before. Moving to the second issue here, which is which cross-reference is appropriate if self-defense is not applicable. This is sort of an aiding and abetting question. Correct, Your Honor. So this is aiding and abetting. So it's a two-fold question. Did Green aid and abet and was that aiding and abetting towards voluntary manslaughter or second-degree murder? Again, the district court did not err in determining that Green aided and abetted Bazille's actions. Again, the PSR and the factual basis discussed that they went inside, they armed themselves, they had a discussion, and then they left the house. And Green took affirmative steps in doing this act. He, one, left the house with a machine gun with an extended clip in it. He raised that machine gun and he fired indiscriminately towards the juveniles. Just because Bazille's bullet is the one that happened to kill the juvenile does not mean that Green was not aiding and abetting and affirmatively taking action towards that outcome. With that being determined, the next question is did Green have the necessary malice for second-degree murder? The district court found at the very least, and that's his language, he acted with wanton disregard and recklessness to human life, which would raise it to second-degree murder. He focused on the fact that he, again, left the house with a machine gun and an extended clip, extended magazine, and fired indiscriminately towards a neighborhood and towards juveniles. That is not an implausible or unreasonable read of the evidence and determination based on the evidence here. In terms of overcoming the heat of passion argument that this was done in the heat of passion, even assuming the confrontation, the juveniles showing up and brandishing their weapons out front is sufficient to startle someone into a rage or fear to cause this deadly action. Even assuming that, the district court was correct to find that there was a cooling-off period here. They came, they brandished their weapons. Bazil and Green told them to leave, walked across the yard, turned their backs to the juveniles, entered the home, closed the door, armed themselves, discussed what they were going to do, left the house. Bazil then crosses the yard again, and then the shootout occurs. This is not a case where a heat of passion occurs and they act without thinking or act out of instinctual fear or rage. This is a contemplated act. They went inside. Both got 180 months? Your Honor, I believe Mr. Bazil got 120. The 180 was for the machine gun, if I'm not wrong, which would only be Green. So Green got 180 and Bazil got less? Correct, Your Honor. I believe that's it. I would have to check the file on Mr. Bazil. So even assuming that that act was sufficient to cause the heat of passion, the judge's determination that there was a sufficient cooling-off period is reasonable given the evidence, is reasonable given the case law. And for those reasons, pending this Court's questions. What's your understanding? Is there any challenge to 922G conviction in this case? No, Your Honor. Did they preserve it? There was a preserved challenge, but it is foreclosed. Okay, but it's just a little bit of an obsession of mine.  Excuse me. Just one minute of questions. The only predicate is the carjacking. Am I correct? I can ask the defense counsel. They are agreeing carjacking is equivalent to theft, therefore it qualifies under DS? Yes, Your Honor. That is my understanding as well. The predicate offense was carjacking. There were some drug offenses, but I'm not sure that they were qualified as the predicate offenses. So if it's carjacking, the original conviction was armed robbery. Correct. He must have had a successful appeal, and then he pleads down to carjacking.  That puts it into a theft. Whereas had it stayed, his original worse conviction, it wouldn't be a theft crime, correct? Correct, Your Honor. So that's an irony. He actually wins in state court challenging his predicate, but by winning he's now put himself in 922G land? Your Honor, and I am somewhat familiar, and I believe it was before the court as well, the district court, that the challenge was not to be – well, it was Ramirez's challenge for the unanimous verdict. That's what overturned his original. Oh, so unanimous for Ramirez. Okay, so he gets the armed robbery flipped, so that's not the predicate, but then he pleads out to carjacking.  That's theft, and boom, he now can't have it. Correct, Your Honor. And the difference in his actual – he went from a 50-year sentence to a time-served sentence, so there was some benefits there.  Thank you. Thank you. Armed robbery would count separately, right? Because it's a violent offense. It just wouldn't be – you've accepted as applied foreclosed on the theory that this is a theft crime predicate, correct? Yes, and to be candid, it was stealing the car that was the armed robbery, so it's really connected. He pled it down to carjacking, and in Louisiana, that does require use of force or intimidation. So it would count both ways, violent offense and a theft offense. Right, right. So it was presented strictly for preservation purposes. Just a few quick comments. On the video and the audio not aligning, I'm not sure if it's that it's not aligning or if the audio just goes out sometimes and comes back in. Sometimes you hear audio, sometimes you don't. For instance, when the final barrage of shooting at the house happened, you don't hear shots before that happens. You just see it hitting the house. And that's the Exhibit 5 that I cite, too. You see smoke when the bullets hit, you hear nothing. Not before. Unlike Santiago, it's amazing other people weren't killed. Pardon me? Gunfire everywhere. Everywhere. The only one killed was the juvenile. Exactly. He was the one across the street from Mr. Bazile, and the ballistics did show it was Mr. Bazile's weapon that did the shooting there, the .32, that killed him there. The tow truck driver's testimony shows that Mr. Green did not exit at the same time as Mr. Bazile, and he was not out there at the same time before Mr. Bazile fired or the young man in blue fired. The tow truck driver says, Mr. Bazile comes out, he shoots, the guy in blue who's directly across the street shoots back, and there's conflict going back and forth. And then the detective who reviewed the tow truck driver's statement said the same thing, that it was at that point that Mr. Green came out, after he heard the shots. In terms of the cross-reference, again, I would point out that Judge Afric relied heavily on this alleged backyard meet-out. I understand we've got this Paragraph 22 problem, but again, I'm And the signed factual basis. Right, but I would submit he's got this picture in front of him, and this picture has the time stamp. Why do you cut a time stamp off of a picture? Every other picture has the time stamp. And he's led to believe this is how it came off of the home surveillance system. And he didn't know, which is why he filed the 2255, which I will tell you was dismissed. That's based on ineffectiveness? His counsel should have seen all of it. Yes, and I think he was worried about the one year for new evidence, thinking he didn't know this. So on the provocation, if we go to the self-defense, he hears the shots, he comes out because his dad's in the middle of it. The cross-reference to second degree for him, again, the backyard played a large role. It looks like that didn't happen. And then you asked a question about sentencing. I do think Mr. Bazeal also got 180 months. I think he did. And that was the statutory maximum for Mr. Green. That emanated from count two, which was felon in possession. That's how he got to the 15-year, 180-month mark. So unless the Court has any other questions, I think we've briefed it as best we can and will submit it to the Court. Thank you. Thanks to you both. We appreciate, Ms. Pierce, your taking this case as a TJA attorney.